UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **LAURA LYNN LINCECUM** | \* | **CIVIL ACTION NO.  09-1209** |
| **VERSUS** | \* | **JUDGE ROBERT G. JAMES** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | \* | **MAG. JUDGE KAREN L. HAYES** |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

### Background & Procedural History

Laura Lynn Lincecum protectively filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on June 14, 2007.  (Tr. 79-80).  She alleged disability since August 2, 2006, because of asthmatic bronchitis, fibromyalgia, a bulging disc, high blood pressure, and arthritis.  (Tr. 82, 93).  The claims were denied at the initial stage of the administrative process.  (Tr. 41-47).  Thereafter, Lincecum requested and received a May 8, 2008, hearing before an Administrative Law Judge ("ALJ").  (Tr. 24-40).  However, in a December 18, 2008, written decision, the ALJ determined that Lincecum was not disabled under the Act, finding at

Step Five of the sequential evaluation process that she was able to make an adjustment to work that exists in substantial numbers in the national economy. (Tr. 10-20). Lincecum appealed the adverse decision to the Appeals Council. On June 12, 2009, however, the Appeals Council denied Lincecum's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On July 8, 2009, Esters sought review before this court. She essentially alleges that the ALJ's residual functional capacity assessment is not supported by substantial evidence, and therefore, the Commissioner did not sustain its Step Five burden.

### Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1)  An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)  An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3)  An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)  If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5)  If an individual is unable to perform past relevant work, then other factors

> including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I. Steps One, Two, and Three

The ALJ determined at Step One of the sequential evaluation process that Lincecum did not engage in substantial gainful activity during the relevant period. (Tr. 15). At Step Two, he found that she suffers severe impairments of high blood pressure, asthmatic bronchitis, arthritis, mild degenerative changes of the back, and fibromyalgia. *Id*. He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 16).

### II. Residual Functional Capacity

The ALJ next determined that Lincecum retains the residual functional capacity to perform light work, reduced by the ability to only occasionally stoop, crouch, crawl, kneel, balance, and climb stairs,

as well as the inability to climb ladders. (Tr. 16).[1]

Plaintiff initially contends that the ALJ failed to fully and fairly develop the record because he failed to obtain all of her medical records. Indeed, "[t]he ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726 (5th Cir. 1996). Nonetheless, the decision of the ALJ will be reversed as not supported by substantial evidence only if the claimant shows not only that the ALJ failed to fulfill his duty to adequately develop the record, but also that the claimant was prejudiced thereby. *Brock, supra.* "To establish prejudice, a claimant must show that [s]he could and would have adduced evidence that might have altered the result." *Id.* (internal quotes omitted).

Lincecum acknowledges that she retained counsel some three months before the administrative hearing. However, there is no indication that counsel called these records to the attention of the ALJ, or otherwise asked him to leave the record open so the records could be obtained. In fact, the alleged medical records were not provided to the Appeals Council or to this court. Thus, even if the ALJ breached his duty to obtain the records, plaintiff has not demonstrated any resulting prejudice. Nevertheless, because this matter is being reversed on other grounds, *see* discussion, *infra*, plaintiff can

---

[1] Light work entails:

> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

ensure that the ALJ obtains these medical records upon remand.

      Plaintiff next contends that the ALJ's residual functional capacity assessment is not supported by substantial evidence. The scant medical record consists largely of an August 18, 2007, consultative examination administered by Leon Williams, M.D., at the request of the state agency. (Tr. 130-133). During the examination, Lincecum reported that she was initially diagnosed with fibromyalgia in 1992. *Id*. She stated that she continued to experience diffuse body aches, that until recently, had not inhibited her activities of daily living. *Id*. With regard to her chronic obstructive pulmonary disease ("COPD") and asthma/bronchitis, Williams noted that Lincecum had been diagnosed about seven years earlier. *Id*. She reported a history of smoking a pack of cigarettes per day. *Id*. She has had no flare-ups or exacerbations since she stopped working. *Id*. Upon examination, Lincecum ambulated well, and had no difficulty mounting and dismounting the examining table. *Id*. She demonstrated some range of motion limitations in the cervical spine. *Id*. She also exhibited tenderness to palpation in the paraspinal muscles of the cervical spine. *Id*. Her lungs were clear to auscultation bilaterally, with no wheezes, rales, or rhonchi. *Id*. She had a full range of motion in her thoracic spine, but decreased range of motion in the lumbar spine. *Id*. She exhibited diffuse muscular tenderness throughout her back. *Id*. Upper and lower extremities demonstrated 5/5 strength. *Id*. Gross manipulative skills were normal. *Id*. Range of motion in her joints was within normal limits. *Id*. However, lumbar spine flexion was decreased to 120 degrees. *Id*. Straight leg raise was negative on the left, and positive on the right side, with shooting pain down the right lower extremity. *Id*. She was unable to lie on her back without assistance. *Id*. She was able to walk on her heels and heel to toe walk. *Id*. She reported, however, that she was not able to squat secondary to pain. *Id*. Motor function was 5/5 in all extremities, with no evidence of muscular atrophy. *Id*. X-rays of the lumbar and cervical spine were all within normal

limits. *Id*. Williams diagnosed lumbago with radiculopathy; chronic obstructive pulmonary disease, asthma/bronchitis, and high blood pressure. *Id*.

Of the foregoing diagnoses, it is manifest that Dr. Williams believed that the lumbago, with radiculopathy, was potentially the most limiting.[2] Williams failed to indicate, however, whether, or to what extent, Lincecum's impairments impacted her ability to perform work-related activities. Quoting Social Security Ruling 96-8p, the Fifth Circuit has observed that,

> a residual functional capacity (RFC) is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule. The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work. . . . RFC involves both exertional and nonexertional factors. Exertional capacity involves seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately. In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. . . . The RFC assessment must include a resolution of any inconsistencies in the evidence.

*Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (citations and internal quotation marks omitted).[3]

In this case, no physician of record has examined plaintiff's impairments and quantified their effects upon her physical ability to perform work-related activities. Instead, it is apparent that the ALJ autonomously derived plaintiff's residual functional capacity. Yet, in the absence of any valid medical

---

[2] Indeed, the record contains a January 18, 2008, x-ray of the lumbar spine that showed chronic disc space narrowing at L5-S1, with associated disc vacuum phenomenon, and mild rotoscolios. (Tr. 175).

[3] Although Social Security Rulings are not binding on the federal courts, *Myers, supra*, they are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35 (b)(1).

7

assessment[4] or other corroborating evidence to support the ALJ's residual functional capacity determination,[5] the court is constrained to find that the ALJ's assessment is not supported by substantial evidence. *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley v. Chater,* 67 F.3d 552, 557 -558 (5th Cir. 1995) (substantial evidence lacking where: no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

### III.   Step Five

Because the foundation for the Commissioner's Step Five determination was premised upon a residual functional capacity that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that plaintiff is not disabled during the relevant period is also not supported by substantial evidence.[6]

---

[4] The record contains a residual functional capacity assessment form completed by the disability examiner which indicates that plaintiff can perform medium work. (Tr. 134-141). A disability examiner, however, is not a medical doctor, and his opinion is not considered an acceptable medical source statement or afforded the same weight as an opinion by a medical or psychological consultant of the state agency. *See* 20 C.F.R. 404.1527(f), 416.927(f); 404.1513(d)(3) and 416.912(d)(3).

[5] Plaintiff's own testimony was not consistent with an exertional capacity for light work, with occasional postural limitations. *See e.g.*, Tr. 33-35.

[6] The court need not reach plaintiff's remaining assignments of error (e.g., any alleged inconsistencies between the vocational expert's testimony and the Dictionary of Occupational Titles); these, and any other issues may be addressed upon remand.

## Conclusion

For the above-stated reasons,

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 23rd day of July 2010.

_____
Karen L. Hayes
U.S. Magistrate Judge